**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

UNITED DEALERS OF CT, a trade
name adopted by the plaintiffs

          v.

GREEN VALLEY OIL, LLC

Civil Action No.

3:12-cv-00474-AWT

September 21, 2012

**URGENT**

**APPLICATION FOR EMERGENCY TEMPORARY INJUNCTION TO MAINTAIN THE
STATUS QUO and REQUEST FOR HEARING**

The Plaintiffs in the above entitled action hereby make this Application for an

Emergency Temporary Injunction to maintain the status quo pursuant to 15 USC sec

2805 and FRCP 65.

As the Court is well aware, there has been an ongoing dispute between the

plaintiffs herein and the defendants, as well as entities known as Getty Properties,

Corp. and NECG Holdings, Corp with respect to the control of certain service station

premises in this state.  See, eg, Getty Properties, Corp., Et al v. Tuxis-Ohr Fuel, Inc.

3:12-cv-865-AWT.  As the court is also aware, the plaintiffs have alleged in that case

that claims made by Getty and NECG with respect to the ownership of the tanks are

1

false and further that the UST's which are the subject of that action are owned either by the plaintiffs or the defendant herein Green Valley Oil, LLC.

Getty has apparently realized their error. We are advised that Getty has filed a motion with the Bankruptcy Court captioned **NOTICE OF PRESENTMENT OF STIPULATION AND ORDER IN CONNECTION WITH BILL OF SALE FROM GREEN VALLEY OIL TO AOC TRANSPORT**, dated August 24, 2012. See, In Re Getty Petroleum Marketing, Inc. Docket # 11-15606 (SCC). A copy of that submission is attached hereto as **exhibit A**.

The plaintiffs' bankruptcy counsel timely objected to that motion on September 4, 2012. Said objection is attached hereto as **exhibit B**. Among other reasons, the plaintiffs bankruptcy attorney objected because the motion was so vague, no one could tell what was being transferred and whether it purported to apply to the plaintiff's locations. We have now confirmed that the referenced motion does in fact purport to apply to the plaintiff stations. A copy of the purported "Bill of Sale" is attached as **exhibit C**. The Court will note that although the Motion appears to be prospective, GVO appears to have signed the Bill of Sale prior to the Motion being filed. The Court will further note that the Bill of Sale is contingent upon the debtor in bankruptcy assuming certain liabilities that it does not now have. So, the Bill of Sale has not taken

2

effect as the consideration recited therein has not been delivered and cannot be delivered without approval from the Bankruptcy Court.  The plaintiffs have multiple problems with the Bill of Sale and seek to maintain the status quo while the disputes are litigated.

**The motion is not what it purports to be.**

In the motion, and in conference conversations regarding the same, Getty suggested that the proposed transfers were essentially a housekeeping matter needed to clarify events which had already transpired as a matter of law.  Whatever it is, the proposed transaction is clearly not that.  On its face, the entity receiving the transfer is "AOC Transport" not the supposed beneficiaries of the operation of law, either Getty or NECG.  For that reason alone, the proposed transaction is different from what supposedly transpired as a matter of law.

Further, the transferor, Green Valley, is being tendered very substantial consideration for this supposed housekeeping matter.  More particularly, several entities, including the bankrupt debtor are agreeing to take on substantial environmental exposure and to defend and indemnify Green Valley from certain environmental exposures.  The return consideration involves the bankrupt and so cannot be tendered with approval from the Bankruptcy Court.  The dealers have objected and will object to

3

the debtor being misused in this way before the Bankruptcy Court.  While it is unclear whether the Bankruptcy Court will entertain the debtor accepting substantial liabilities for dubious benefit, it is clear that only that court can control the actions of the debtor. This Court however has jurisdiction over the actions of the defendant, Green Valley Oil, LLC.  The Bankruptcy Court does not.  Only this Court can stop GVO from participating in the proposed transaction and have GVO withdraw from the contract before the consideration is approved.

### The problems could easily have been resolved if the motion was for the pupose asserted.

The plaintiffs, through counsel, offered to let the motion be granted on consent if the documents were amended to explicitly state that the stipulation and bills of sale are not intended to affect the rights of third parties like the United Dealers and are solely meant to memorialize what Getty believed occurred as a matter of law; namely, that when the Sublease between GVO and GPMI ended, it allegedly resulted in the transfer of the subject tanks to GPMI. The effect would be that the Bills of Sale would be without prejudice to any rights and claims by any third parties – specifically the present lawsuit.
**Exhibit D.** The dealers also suggested that the disputed sites simply be removed from the stipulation with the same effect.   These proposed changes were rejected.  **Exhibit E.**

4

We submit that it is obvious that the proposed transaction is, in fact, intended to prejudice the plaintiff's herein.  Clearly this transaction is more than mere housekeeping.

**The transaction is retroactive.**

The Bill of Sale purports to be **retroactive to May 1, 2012**.  It further purports to transfer the personal property located at the plaintiff's stations to an entity known as AOC Transport, Inc.  The Bill of Sale explicitly states that it is "given at the request of ... Getty Properties Corp.  It certainly appears that Getty and NECG are again trying to re-write history in an attempt circumvent this Court's review of their actions.  This continues Getty's abusive and unsuccessful attempts to use the Bankruptcy Court and the Bankruptcy process to deprive the plaintiffs herein of their rights, in violation of due process.  We submit that this Court must be allowed to adjudicate the disputes between the parties without repeated "end arounds."

**The pending motion is inconsistent with Getty's legal position.**

In the Tuxis-Ohr case pending before the Court, Getty and NECG repeatedly and vociferously asserted that they owned the UST's at the plaintiff's stations.  It is now obvious that those repeated representations made to this Court as well as the Bankruptcy Court and the Connecticut Superior Court are at best, misleading and at

5

worst, blatant falsehoods.

 **It is appropriate to maintain the status quo.**

The plaintiffs now come before the Court to beg an order maintaining the status quo and prohibiting the defendant herein from taking any action or participating in any scheme to sell, transfer or assign any interest it may have or retain in any real or personal property to any person or entity.  To the extent necessary, Green Valley should withdraw from the pending motion and the contemplated executory contract. The intent of this request is to preserve the rights of the Court to adjudicate the rights and obligations of the parties without being preempted by an ill conceived agreement which purports to be retroactive.

The plaintiffs further respectfully request that if the court deems it necessary, the Defendant be ordered to appear at the earliest possible time to show cause why this urgent prayer for a Temporary Injunction should not be granted. **Time is of the essence**.

In further support, the plaintiffs submit that they have previously claimed a right of title in the real and personal property either constituting or located on the service station premises which are the subject of the plaintiff's complaint.  The plaintiffs further clarified their position in the Second Amended Complaint filed September 15, 2012.

6

The plaintiff's have further asserted the same claim in the Tuxis-Ohr matter also before this Court.

Now, the defendant, at the insistence of Getty, is suggesting that it intends to retroactively transfer the property.  At best, this proposed transfer will further muddle an already severely confusing situation.  At worst, it will act to cover up an attempted fraud perpetrated by Getty and NECG.  It is clearly yet another attempt by Getty to forum shop this dispute.  The transactions are what they are.  Getty should not be attempting (again) to change history by retroactive agreements.

**LAW AND ARGUMENT**

Rule 65 case law has developed two formulae upon which an injunction could be based.  It is generally held that injunctive relief under F.R.C.P. 65 may be granted either upon a showing of probable success on the merits coupled with possible irreparable harm; or by demonstrating a sufficiently serious question on the merits and a decided balance of the hardships in favor of the movant.  *See* Phillip v. Fairfield University, 118 F.3d 131 (2d Cir. 1997); Jayaraq v. Scappini, 66 F 3d 36 (2nd Cir. 1995); Branson v. Ultrasonics Corp. v. Stratman, 921 F.Supp. 909 (D.Conn. 1996).

The formulations clearly vary based upon the magnitude of the harm which will be suffered; the more severe the hardship, the less stringent the requirement to show

likelihood of success. For the following reasons, the plaintiffs submit that under either formulation of the Rule 65 standard, an injunction should issue.

### 1.    THE PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF.

It is well settled that the loss of Franchise rights is, per se, an irreparable injury. Stenberg v. Checker Oil Co., 573 F.2d 921 (6th Cir.1978); Gilderhus v. Amoco Oil Co., 470 F.Supp. 1302, 1304 (D.Minn.1979); Milsen Co. v. Southland Corp., 454 F.2d 363 (7th Cir.1971); Wojciechowski v. Amoco Oil Co., 483 F.Supp. 109, 116 (1980). The Second Circuit has repeatedly held irreparable harm where a party is threatened with the loss of a business. Tom Doherty Associates, Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995). In Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.1970), a father-and-son car dealership was threatened with termination of its franchise by the manufacturer. The Court affirmed a finding of irreparable injury on the grounds that termination of the franchise would "obliterate" the dealership and that the right to continue a business "is not measurable entirely in monetary terms." Id. at 1205; see also Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125-26 (2d Cir.1984) (per curiam) (finding irreparable harm from loss of "ongoing business representing many years of effort and the livelihood of its husband and wife owners").

In this circumstance, Getty is using the debtor in bankruptcy and the defendant herein to circumvent the judicial process to prevent the plaintiffs from getting their day in court.  But, even were we to assume that the Getty position that the transaction were mere housekeeping to codify an already existing transfer as a matter of law, why does it need to be done in the manner they are doing it?  Why is the reservation of rights objectionable?  How could there be any prejudice?

If the alleged transfer occurred as they claim, the new bill of sale is just another piece of paper.  This new piece of paper was not contemplated for several for several months.  Under Getty's theory it is mere surplussage.  In contrast, if it in fact effects rights, it is only offered because these plaintiffs identified the obvious defect in the Getty's claim of right and Getty is taking every pain and bearing every burden in a vain attempt to rewrite history.   If the property is transferred before the Court has the ability to be decide this case on the merits, it may prove difficult and severely prejudicial to reverse the process. This should be done the right way.

2.     **THE BALANCE OF THE HARDSHIPS WEIGHS DECIDEDLY IN FAVOR OF THE PLAINTIFFS.**

There can be no reasonable dispute that the hardships balance decidedly in plaintiffs' favor.  The injunction sought is only to maintain the status quo which has existed at least since May.  The plaintiffs respectfully submit that the rights of the

9

parties and Getty are vested at this point.  The only thing the proposed transaction can do is further complicate the already heavily contested claims in this matter.  Further, the defendant herein will suffer no hardship at all.  It has already surrendered its rights in the real property and have abandoned the personal property.  In contrast, the plaintiffs remain in possession of the real estate.  The plaintiffs continue to use the personal property each and every day.

In short, the fair, just and equitable result is to maintain the status quo.  In the unlikely event that the plaintiffs are dispossessed, the rights to the property can be easily adjudicated.  If the injunction is not issued, the property may conceivably be transferred on more than one occasion.  It will require multiple new parties and will unnecessarily complicate matters.

In further support, the undersigned adopts the arguments of bankruptcy counsel,

Matthew Beatman attached hereto as **exhibit B** as if set forth herein verbatim.

THE PLAINTIFFS,
United Dealers of CT

By: _____
John J. Morgan
Barr & Morgan
22 Fifth Street
Stamford, CT 06905
(203) 356-1595
CT13312
jmorgan@pmpalawyer.com

CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

By:_____

John J. Morgan (ct13312)
Barr & Morgan
22 Fifth Street
Stamford, CT 06905
Ph. (203) 356-1595
Fx: (203) 357-8397
Jmorgan@pmpalawyer.com

1