UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED DEALERS OF CONNECTICUT,<br><br>Plaintiffs,<br><br>v.<br><br>GREEN VALLEY OIL, LLC, et al.,<br><br>Defendants. | Civil Action No. 3:12-CV-00474-AWT<br><br><br><br>September 24, 2012 |

### OPPOSITION OF GETTY PROPERTIES CORP. TO APPLICATION FOR TEMPORARY INJUNCTION

Getty Properties Corp. ("Getty") hereby respectfully submits this Opposition to the Application of Plaintiffs herein for a "temporary injunction" (presumably a temporary restraining order or "TRO") relating to a Bill of Sale between defendant Green Valley Oil, LLC and Getty for underground storage tanks and related equipment located at over 300 locations in five states. Green Valley has advised that it does not intend to respond to Plaintiffs' application, and so Getty, while not a party in the litigation, respectfully seeks to address the Court to protect its interests. As more fully set forth below, Plaintiffs have demonstrated no entitlement to the entry of a TRO here because (1) the transaction they apparently seek to enjoin, without explicitly saying so, has been consummated and awaits approval of a component of the arrangement by the Bankruptcy Court for the Southern District of New York; (2) they will suffer no irreparable harm because they are at liberty to make any challenges they choose in the

1

pending Tuxis-Ohr case (3:12 CV – 00865); (3) because of these factors, the balance of hardships tilts drastically towards Getty, which has been operating for over four months with leases to suppliers at hundreds of stations dependent upon the ability to use the underground storage tanks at issue here; and (4) Plaintiffs make no showing whatsoever of any likelihood of success on the merits, based on counsel's baseless and fanciful theory that the former GVO operators have any claim to the realty or personalty located at the stations they now illegally occupy.  As a result, the application for a "temporary injunction" should be denied.

## BACKGROUND

As referenced in the Stipulation and Order in Connection with the Bill of Sale From Green Valley Oil to AOC Transport (the "Stipulation") attached to Plaintiffs' Application as Exhibit A and the Bill of Sale ("BOS") attached as Exhibit C to the Application, the termination and subsequent rejection of the Master Lease between the debtor Getty Petroleum Inc. ("GPMI") and Getty caused all of the underground storage tanks to revert back from GPMI to Getty or to its designee.  This was consistent with the process established by the Bankruptcy Court's orders of April 2nd and April 30, 2012. Accordingly, on or about May 1, 2012, GPMI executed Bills of Sale to Getty or its designees (in Connecticut, a designee was NECG Holdings) for the UST Installations at hundreds of stations, including the GVO locations..

Similarly, the sublease between GPMI and Green Valley Oil (GVO) required the return of the UST Installations from GVO to GPMI upon termination of the sublease. After termination of the sublease and subsequent entry of the Stipulation and Order of

2

January 24, 2012, GVO vacated all the stations as of May 1, 2012 and they became part of the GPMI leaseholds which reverted to Getty. However, it was recently discovered that GVO failed to execute a Bill of Sale relating to the UST Installations located on the locations leased from GPMI, which include over 300 stations in five states.

To correct this oversight, GVO agreed to enter into a bill of sale for the UST Installations in favor of Getty's wholly-owned subsidiary AOC Transport, as of May 1, 2012. The bill of sale was executed on or about August 22, 2012, and delivered to Getty on or about September 20, 2012. As part of the consideration for this correction, Getty, GPMI and the creditors' committee agreed to release GVO from any environmental liability accruing after May 1st, 2012. (Contrary to Plaintiffs' assertions, the debtor GPMI did not assume "substantial environmental exposure" (App. at 3); rather, it and the other parties simply released GVO from post-transfer claims.) [1]Because one of the releasors is the debtor, such release is being submitted to the Bankruptcy Court for its approval. When this transaction is complete, Getty will cause AOC Transport to execute appropriate bills of sale to NECG and the other suppliers which have leased stations from Getty.

On or about August 24, 2012, the creditors committee, GPMI and Getty filed the Notice of Presentment with the Bankruptcy Court for the Southern District of New York

---

[1]. Indeed, the Connecticut Department of Energy and Environmental Protection strongly indicated its desire to hasten the documentation process, and ensure that title to the USTs was promptly vested in and recorded as being with Getty Properties — a going concern capable of exercising the appropriate level of environmental oversight in the use of the USTs.

3

(also attached as Exhibit A to the Application.) Plaintiffs submitted their Objection, attached as Exhibit B to the Application. Attorneys for Getty were discussing possible language changes in the Stipulation with Plaintiffs' bankruptcy counsel when this Application was filed unexpectedly. See correspondence attached as Exhibits D and E to the Application. On Monday, September 24, 2012, Getty's counsel will request that Hon. Shirley Chapman (U.S.Br.J., SDNY) consider approving the release at a conference scheduled for Thursday, September 27, 2012.

## ARGUMENT

"Issuance of preliminary injunctive relief, such as a TRO or preliminary injunction, is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy, 477 F. Supp. 2d 472, 474 (D. Conn. 2007) (quoting Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir.2005)). "In order to obtain such relief, a party must demonstrate: (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor." Id. (citing Brennan's, Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 129 (2d Cir.2004)).

Plaintiffs have failed to carry their burden of showing that they are entitled to the "extraordinary and drastic relief" of a TRO. Without ever explicitly saying what they want the Court to do, Plaintiffs assert that "Green Valley should withdraw from the pending motion and the contemplated executory contract;" (App at 6) but the Bill of Sale

4

has been signed and was delivered to Getty days ago. GVO cannot simply withdraw from an executed contract, nor can it be "prevented" from signing something it has already executed. So, it is unclear what relief Plaintiffs seek because there is no action by Green Valley to be enjoined, even assuming an injunction otherwise would have been warranted, which it plainly is not. The application for a TRO was therefore moot even before Plaintiffs filed it.

Perhaps, then, what plaintiffs really seek is a determination by this Court that the bankruptcy court should not permit GPMI to release Green Valley as consideration for delivering the Bill of Sale. But the disposition of GPMI's property, such as its potential claims against Green Valley, is of course not properly before this Court; that is the bankruptcy court's exclusive province. It is certainly unclear why Plaintiffs need this Court to intervene in matters pending before the Bankruptcy Court, and would seem to risk violating the automatic stay. To the extent they believe they have suffered any harm from the Bill of Sale transaction, they can raise the claim in the Tuxis-Ohr proceeding pending before this Honorable Court. Accordingly, they have not demonstrated any irreparable harm.

Further, the balance of hardships would decidedly tip towards Getty if this Court were somehow to invalidate the Bill of Sale. As mentioned above, this Bill of Sale is to complete paper work in corporate transactions closed over four months ago involving hundreds of stations in five states with new contractual relationships involving the conduct of business in hundreds of communities. The completion of this paperwork is sought in part to allay concerns of environmental agencies, and eliminate doubt that

Getty is the party responsible for environmental remediation associated with the tanks – and not GPMI, which is liquidating, Green Valley, which is also winding down, nor any other party unable to bear the burden of environmental cleanup. Preventing the proper documentation of the chain of title, as Plaintiffs apparently seek to do, could greatly interfere with Getty's critical ability to monitor the USTs for leakage and conduct swift remediation in the event of contamination.

In contrast, Plaintiffs point to no actual harm to themselves. Indeed, the status quo today reflects the transfer of these UST Installations down a chain of transactions. For example, the tanks at issue in Connecticut have been registered in the name of NECG Holdings (or another supplier, CCO, LLC) with the Connecticut Department of Energy and Environmental Protection since May, 2012.

Finally, Plaintiffs completely fail to discuss, much less establish, in their TRO application the merits of legal entitlement to any relief whatsoever. They do not cite any legal authority as to how or why they have any claim of ownership to the UST Installations at the stations which they currently illegally occupy. As a result, they have not demonstrated, have not even tried to demonstrate, nor can they demonstrate a likelihood of success on the merits or sufficiently serious questions of law to justify the relief sought, whatever that might be.

nydocs1-995742.2

## CONCLUSION

For the reasons set forth above, Plaintiffs are not entitled to the grant of injunctive relief interfering with the Bankruptcy Court's approval of the release component of the Bill of Sale between GVO and AOC Transport, or any invalidation of the Bill of Sale itself.

PLAINTIFFS,
GETTY PROPERTIES CORP.

By__/s/_____
Charles T. Lee (CT00297)
ANDERSON KILL & OLICK, P.C.
1055 Washington Boulevard, Suite 510
Stamford, CT  06901
Telephone: (203) 388-7950
Facsimile: (203) 388-0750
E-Mail: clee@andersonkill.com

*Attorneys for:* Getty Properties Corp. .

## CERTIFICATION

I, Charles T. Lee, Esq., hereby certify that on September 24, 2012, the above document was electronically filed with the Clerk of the Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorneys of record:

John J. Morgan, Esq.
Barr & Morgan
22 Fifth Street
Stamford, CT  06905

                                              /s/ Charles T. Lee
                                              Charles T. Lee

nydocs1-995742.2